Sherman, RJ.
This is an action in contract and tort to recover for the alleged breach of contract, negligence and breach of express and implied warranties by defendant FPS Fire Protection Systems, Inc. (“FPS”) in its sale and installation of a sprinkler system in the plaintiff’s factory. Judgment was entered for the defendants.[2] Plaintiff Ideal Tape Co., Inc. (“Ideal”) thereafter filed this Dist./Mun. Cts. R. A. D. A., Rule 8C appeal on a charge of error in the trial judge’s disposition of requests for rulings of law relative to Ideal’s claim for breach of the implied warranty of merchantability.
The salient facts are undisputed. In 1987, Ideal’s insurer required changes to be made in Ideal’s factory sprinkler system despite the absence of any leak or other problem in fifteen years. FPS submitted a proposal for the sprinkler system project which was accepted, with minor modifications, in June, 1987. FPS completed the installation work in October, 1987, and a hydraulic test required by Ideal’s insurer to certify the system as operational was successfully performed. Ideal’s employees thereafter tested the system on a monthly basis.
FPS’ contract work consisted primarily of replacing existing sprinkler pipes in the main manufacturing area and in two smaller sections of Ideal’s plant In the main area, FPS replaced 3/4” and 1” pipes with 1-1/2" pipes. In January, 1992, the first of a series of pin-hole size leaks appeared in the 1-1/2” piping supplied and installed by FPS. From January, 1992 through December, 1992, a total of nine leaks occurred in the pipes fiirnished by FPS. FPS repaired some of these leaks and billed Ideal for the cost of such repairs. On one occasion, when FPS did not respond, a leak above an expensive converting machine was repaired by another company at a cost to Ideal of $437.07. Other leaks were patched by Ideal employees.
In consequence of the continued leaks, Ideal sent a section of the 1-1/2” pipe to Baker Testing Services, Inc., which x-rayed the pipe. The section of pipe and x-rays were then forwarded to Dr. Thomas W. Eager, a Professor of Metallurgy at the Massachusetts Institute of Technology. Dr. Eager testified at trial that the 1-1/2” pipe con *58 tained welding defects which occurred during the manufacturing process, and that replacement of all of the piping was the most cost effective remedy.
Ideal informed FPS that it would proceed with the replacement process, and requested that FPS submit a bid for such work. FPS did not respond, and the piping was replaced in June, 1993 by Norwood Fire Protection, Inc. at a cost to Ideal of $17,073.00.
After trial, the court made extensive findings of feet which included the following:
Dr. Thomas W. Eager, duly qualified, was of the opinion that the pipe he examined ... was defective. The defects were caused in the manufacturing process ... It was cost effective to remove and replace this pipe rather than to test each pipe individually and then replace the pipes that tested defective.
The total cost charged by Norwood Fire Protection, Inc. was $17,073.00 which I find to be fair and reasonable.
The sole cause .of the pin hole leaks to the 1-1/2” diameter pipes... was defective manufacturing ... The monthly schedule testing of the fire sprinkler system... did not cause and/or contribute to the defective condition of these pipes.
Based on the evidence that I heard, I cannot factually find by a preponderance of the evidence, that.FPS is at fault for installing the defectively manufactured pipes where it was not established that FPS had knowledge, actual or constructive, that the pipes were defective.
Based on the evidence that I heard, I cannot factually find by a preponderance of the evidence, that FPS breached any express and/or implied warranties.
The trial judge also denied Ideal’s request number one:
1. The evidence warrants a finding for the Plaintiff against the Defendant, FPS Fire Protection Systems, Inc.
DENIED. THE PLAINTIFF FAILED TO INTRODUCE CREDIBLE EVIDENCE TO SUPPORT THE WITHIN REQUESTS.
There was error.
1. Ideal’s request for ruling number one constituted a standard “warrant” request for ruling of law, in the form prescribed by Mass. R. Civ. R, Rule 64A(b) (1), that the evidence was legally sufficient to permit a general finding in favor of Ideal. It is elementary that a “warrant” request for ruling seeks a single and specific determination by a trial judge as to the sufficiency or adequacy of the evidence as a matter of law. In resolving the issue of law as to the sufficiency of the evidence which is posed by a warrant request, the weight and credibility of the evidence are irrelevant. Cooperstein v. Turner Bros. Construc., Inc., 1992 Mass. App. Div. 249, 251.
If a party requests from a District Court judge a ruling of law that ‘the evidence warrants a finding’ of a particular fact, even if the judge does not himself believe the fact to be true, the judge should allow the request as long as there is sufficient evidence from which a rational fact finder could determine that the fact is true.
Gauvin v. Clark, 404 Mass. 450, 456-457 (1989). Thus where enough evidence has been introduced to permit a finding in favor of a party who submits a “warrant” *59 request, the request should be allowed. Liberatore v. Framingham, 315 Mass. 538, 541-542 (1944). The denial of such a request can be sustained only if the trial judge files written findings of fact which demonstrate that the final judgment did not result from an improper disregard of evidence in favor of the requesting party or from an erroneous ruling of law as to what constitutes sufficient evidence on a given claim, but was instead based on the judge’s disbelief of such evidence or acceptance of the credibility and dispositive weight of contradictory evidence. DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 100-101 (1975).
The court’s findings of fact in the instant case Ml to justify the denial of request number one because such findings fail to demonstrate that the court’s judgment was not based on an incorrect ruling of law as to the sufficiency of the evidence to have permitted a finding for Ideal. A G.L.c. 106, §2-314 claim for breach of the implied warranty of merchantability is established by evidence that “the damages complained of were proximately caused by a defect or breach which existed at the time of sale.” Fernandes v. Union Bookbinding Co., 400 Mass. 27, 37-38 (1987).[3] Ideal introduced sufficient evidence to establish its §2-314 breach of warranty claim in the form of proof that the piping was defective at the time it was supplied and insMled by FPS, and that such defective piping resulted in the repair and replacement costs incurred by Ideal. Contrary to his disposition of request for ruling number one, it is clear that the trial judge did not disbelieve Ideal’s evidence on its warranty claim, or accept contradictory evidence introduced by FPS. The trial judge indeed made all of the findings of fact in favor of Ideal necessary to its §2-314 recovery in this case, specifically accepting the credibility of Ideal’s evidence as to the defective piping and resulting damages. It would appear instead from the court’s findings that the trial judge erroneously ruled that knowledge was an element of a G.L.c. 106, §2-314 claim and that Ideal had failed to advance sufficient evidence of FPS’ knowledge of the defective piping. Recovery for breach of a warranty of merchantability does not, however, require evidence of knowledge.
As the evidence introduced by Ideal was sufficient as a matter of law to have warranted or permitted a finding in its favor, the court’s denial of Ideal’s request for ruling of law number one and its judgment for FPS constituted error.
2. FPS contends that Ideal was not entitled to recover herein and thus that the trial court properly denied Ideal’s request for ruling of law number one because the implied warranty of merchantability in the parties’ transaction was replaced by a one year warranty that is standard in the industry for sprinkler installations, see G.L.c. 106, §2-316 (3) (c),[4] and Ideal did not discover the defects in the piping until after the expiration of the one year warranty. The short answer to FPS’s argument is that there is nothing in the record which remotely suggests that the court made any finding or ruling as to such a one year warranty. FPS’ request for rulings were “deemed waived” in view of the court’s ultimate finding in favor of FPS. Further, the trial judge’s five single-spaced pages of findings are devoid of any reference to a one-year warranty, and it may not be rationally inferred that the judge elected to omit from his lengthy memorandum of decision the single, dispositive finding which would have clarified and warranted his judgment for FPS.
Accordingly, the trial court’s judgment for FPS is hereby vacated. This case is returned to the Lowell Division for a new trial of Ideal’s claims against FPS. The *60 court’s judgment for defendant F.W. Webb Company, which was not the subject of this appeal, is to stand.
So ordered.

 The plaintiff has not appealed the trial court’s judgment in favor of defendant F. W. Webb.

 Section 2-314 states, in relevant part: “(1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind ... (2) Goods to be merchantable must at least be such as ... (c) are fit for the ordinary purposes for which such goods are used ...”

 Section 2-316(3) (c) provides that “an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.”